UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **BEVERLY J. MAGEE, Individually** ) | |
| **and on behalf of all others similarly situated,** ) | |
|  ) | |
|  **Plaintiff,** ) | |
|  ) | |
|  vs. ) | CAUSE NO.  1:05-cv-1675-WTL-RLY |
|  ) | |
| **ALLIANCEONE, LTD.** ) | |
|  ) | |
|  **Defendant.** ) | |

### ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment and the Plaintiff's cross-motion for summary judgment.[1]  Both motions are fully briefed, and the Court, being duly advised, **GRANTS** the Plaintiff's motion and **DENIES** the Defendant's motion for the reasons set forth below.

FACTUAL BACKGROUND

Plaintiff Beverly Magee received a $10,000.00 unsecured line of credit from Ameritrust N.A. (now known as, and hereinafter referred to as, "KeyBank") in November 1990.  Magee's account became past due in February 2004; on March 1, 2004, when her account was 15 days delinquent, her account was referred to Defendant AllianceOne, Ltd. ("AllianceOne") to collect on the $118.33 delinquent amount.  Magee's account was brought current on April 24, 2004.  Magee's account again became past due in May 2004, and KeyBank referred it to AllianceOne on June 1, 2004, this time to collect on the delinquent amount of $135.48.  Magee's account was brought current on June 5, 2004.

---

[1] By agreement of the parties, the Court is addressing the summary judgment motions prior to addressing the class certification issue; thus, this ruling applies to Plaintiff Magee alone, and not the other members of the purported class that she seeks to represent.

On September 30, 2004, Magee's account was again referred to AllianceOne to collect an outstanding amount of $79.38.  At that time, the last payment Magee had made on the account was a payment of $150.00 on August 24, 2004; that payment was less than the minimum due at the time.[2]

On December 15, 2004, AllianceOne sent Magee a letter ("the Letter") which stated, in relevant part:

> Minimum Amount Due:        $383.85.
>
> Your account has been referred to our office for collection.
>
> AllianceOne is committed to provide the effort necessary to collect this debt.  It is recommended that you take this opportunity to pay at least the Minimum Amount Due.

At the bottom of the letter, just above AllianceOne's contact information, the following was set forth in bold type:

## **NOTICE**

**This communication is from a debt collector.**
**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

As of the date of the Letter, Magee had not made any payments on her account since her August 24, 2004, payment.  The stated minimum amount due in the Letter ($383.85) consisted of the payments Magee had missed on September 14, October 14, and December 14.  The Letter did not set forth the entire amount of the debt owed by Magee to KeyBank, which at that time was over $10,000.00.

The written agreement governing Magee's account with KeyBank ("the Agreement")

---

[2]The facts in this and the preceding paragraph are taken from AllianceOne's Statement of Material Facts; Magee disputes them in several respects that are not material to this decision.

contained the following relevant provisions:

> EVENTS GIVING US THE RIGHT TO DECLARE A DEFAULT
>
> You agree that we may, in our sole discretion, terminate your Account or reduce your credit limit by declaring you to be in default by sending a notice to you in accordance set for below if:
>
> A. You fail to pay in a timely manner any amounts due under this Agreement.
>
> . . .
>
> OUR RIGHTS UPON THE OCCURRENCE OF THE ABOVE EVENTS
>
> If any matter described in the preceding section entitled Events Giving Us the Right to Declare a Default should occur, we shall have the right to declare a default. Such a default shall become effective when declared in the form of a written notice to you.

At no relevant time had KeyBank declared Magee's account to be in default, and the word "default" does not appear in the Letter. In addition, the agreement between KeyBank and AllianceOne specifies that accounts such as Magee's (unsecured lines of credit) are not deemed to be in default until they are 180 days past due.

<u>SUMMARY JUDGMENT STANDARD</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Robin v. Espo Engineering Corp.*, 200F.3d 1081, 1088 (7th Cir. 2000). "The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there

is a genuine triable issue." *Bilow v. Much Shelist Freed Deneberg Ament & Rubenstein*, P.C., 277 F.3d 882, 893 (7th Cir. 2001). "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment," *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 726 (7th Cir. 2004); rather, "[t]he party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Robin*, 200 F.3d at 1088. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## DISCUSSION

In her complaint, and in her motion for summary judgment, Magee argues that the Letter violated the Fair Debt Collection Practices Act ("FDCPA") as a matter of law because it falsely, deceptively and misleadingly stated the amount of the debt. In its motion for summary judgment, AllianceOne argues that it was not required to comply with the FDCPA because it was not acting as a "debt collector" when it sent the Letter; in response to Magee's motion it argues that, in any event, the Letter complied with the FDCPA.

### Was AllianceOne Acting as a "Debt Collector"?

The FDCPA imposes certain requirements on "debt collectors," which it defines as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the FDCPA excludes from the definition of "debt collector" any person who otherwise satisfies the definition to the extent that the collection activity in question "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Relying upon this exception to the definition of "debt collector," and thus exception to the applicability of the FDCPA,

AllianceOne argues that the Letter was not subject to the FDCPA because Magee's debt was not in default at the time KeyBank referred it to AllianceOne for collection.

Unfortunately, the FDCPA does not define the term "default." The dictionary definition of default is "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." Black's Law Dictionary (7th ed. 1999). On the other hand, as noted above, the Agreement provides that the account was not in default unless KeyBank declared it to be so in writing. AllianceOne argues that because Magee's account was not in default under the express terms of the Agreement, it also was not in default for FDCPA purposes. Several cases support AllianceOne's position that in the absence of a statutory definition of default, the definition (if there is one) contained in the applicable loan or credit agreement is used to determine if and when the debt is in default. *See Alibrandi v. Financial Outsourcing Servs., Inc.*, 333 F.3d 82, 87 n.5 (2nd Cir. 2003) ("Until Congress ends the statutory silence surrounding the term 'default,' we conclude that the interests of debtors, creditors, and debt service providers will best be served by affording creditors and debtors considerable leeway contractually to define their own periods of default, according to their respective circumstances and business interests."); *Prince v. NCO Financial Servs., Inc.*, 346 F.Supp.2d 744 (E.D. Pa. 2004) (applying definition of default in applicable contract); *Hartman v. Meridian Financial Servs., Inc.,* 191 F.Supp.2d 1031 (W.D. Wis. 2002) (same).

With all due respect, the Court disagrees with these cases, at least in cases such as this one in which the applicable agreement leaves it to the discretion of the creditor whether to declare default. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). This purpose would be contravened if a creditor were unilaterally able to determine when and if an account was in default for FDCPA

purposes and therefore whether the provisions of the FDCPA applied to the debt collection activities of the collection agency it hires. For example, because 15 U.S.C. § 1692a(6)(F)(iii) looks at whether the loan was in default at the time it was "obtained" by the person involved in the collection activity, and not whether it is in default at the time the collection activity takes place, KeyBank could have referred Magee's account to AllianceOne for collection one day and declared her account to be in default the next, thereby allowing AllianceOne to engage in collection practices that are prohibited by the FDCPA (because the loan was not in default when AllianceOne "obtained" it) and at the same time giving KeyBank the "rights upon default" afforded it under the Agreement.

It is doubtful that such a result was intended by Congress when it drafted § 1692a(6)(F)(iii). Rather, it appears that Congress intended to distinguish between "[c]reditors, 'who generally are restrained by the desire to protect their good will when collecting past due accounts,'" and "debt collectors, who may have 'no future contact with the consumer and often are unconcerned with the consumer's opinion of them.'" *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) (quoting S. Rep. 95-382 at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696)). A company hired to service the debt of another–that is, send bills and collect routine payments–falls under the "creditor" category, while a company like AllianceOne that is hired specifically because a debtor has missed a payment, and the creditor believes the debtor is more likely to bring her account current if she is contacted by a third-party debt collector than if she receives a routine bill from the creditor, falls under the "debt collector" category. *See* Deposition of Natalie Burford, KeyBank Vice-President of Loss Investigation at 18 (candidly explaining that KeyBank hires AllianceOne to send collection letters to delinquent debtors, rather than simply sending them itself, "so that the customer thinks like oh, boy, I am

now . . . at AllianceOne . . . I want to be back in the good grace of KeyBank.."). It appears to the Court that it was these two situations that Congress intended to distinguish between when it included the exception for loans that were not "in default" in § 1692a(6)(F)(iii). Reading the word "default" as having its dictionary definition would further this intention, and would also have the benefit of consistency–creditors, debtors, collection agencies, and courts would know whether a debt was in default for FDCPA purposes without referring to and interpreting the underlying agreement.

The Court determines that under the facts of this case, in which Magee's account was referred to AllianceOne not merely for servicing, but for collection because she had "defaulted" as that term is commonly understood in the English language, and in which AllianceOne sent Magee a letter referring to itself as a debt collector and warning Magee that it was "committed to provide the effort necessary to collect this debt," AllianceOne was, in fact, acting as a debt collector as that term is defined in the FDCPA.

Did the Letter Violate the FDCPA?

In her motion for summary judgment, Magee argues that the Letter violated the requirement in 15 U.S.C. § 1692g(a)(1) that a debt collector provide the debtor with "the amount of the debt" because it does not set forth the amount of the debt, but rather only states a "Minimum Amount Due." Magee further argues that the Letter violated the prohibition in 15 U.S.C. § 1692e against using "any false, deceptive, or misleading representation or means in connection with the collections of any debt" because the "Minimum Amount Due" stated in the Letter was incorrect. The Court agrees on both accounts. The "amount of the debt" was the amount that Magee owed KeyBank as of the date of the letter; that amount is not included anywhere in the Letter, in violation of § 1692g(a)(1). AllianceOne argues that it was only hired

by KeyBank to collect on the *past due* amount on Magee's account, which it says was the

$383.85 listed as the "Minimum Amount Due" in the Letter. The Letter does not refer to a "past

due amount," however, or explain that AllianceOne is only collecting the "past due amount";

rather, it misleadingly refers to a "Minimum Amount Due." The only logical reading of the term

"minimum amount due" is the amount Magee would have to pay in order to make Magee's

account current; at the time of the Letter that amount was at least $522.98, as set forth in the

statement dated November 19, 2004, that Magee received from KeyBank.[3]  Therefore, it was

inherently misleading, and a violation of § 1692e, for AllianceOne to list $383.85 as the

"Minimum Amount Due."

## Conclusion

For the reasons set forth above, the Court finds as a matter of law that the Letter violated

the FDCPA by failing to include the amount of the debt, as required by 15 U.S.C. § 1692g(a)(1),

and by misleading Magee regarding the "minimum amount due" on her account, in violation of

15 U.S.C. § 1692e. Accordingly, AllianceOne's motion for summary judgment is **DENIED** and

Magee's motion for summary judgment is **GRANTED**.

**Within 20 days of the date of this Entry**, the parties shall file a notice with the Court

regarding the pending motion for class certification. Specifically, the parties shall inform the

Court whether, in light of this ruling, they are able to reach an agreement regarding the class

---

[3]AllianceOne does not dispute that the actual minimum amount due on Magee's account at the time the Letter was sent was at least the $522.98 minimum amount due listed in the November 19, 2004, statement from KeyBank, but notes that that amount includes a "current amount due" of $144.13, and argues that it was not hired to collect any current amounts and therefore was not required to include that amount in the Letter. However, Magee had no way of knowing that when AllianceOne said "minimum amount due" in the Letter it actually meant "past due amount."

certification issue or, if not whether any additional briefing is required on the issue.

    SO ORDERED:  03/27/2007

    Hon. William T. Lawrence, Magistrate Judge
    United States District Court
    Southern District of Indiana

Copies to:

Steven James Halbert
shalbertlaw@aol.com

David J. Philipps
GOMOLINSKI & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
GOMOLINSKI & PHILIPPS, LTD
mephilipps@aol.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com

Michael Patrick Smith
HINSHAW & CULBERTSON
msmith@hinshawlaw.com